Case 3:24-mj-00287-RMS   Document 1-1   Filed 03/29/24   Page 1 of 10

United States District Court
District of Connecticut
FILED AT NEW HAVEN

3/29 ,20 24

By N. Langello
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE INTERIOR CHEEKS OF THE MOUTH OF KENNETH STURDIVANT WITH TWO BUCCAL SWABS | Case No. 3:24MJ 287 RMS<br><br>March 29, 2024 |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Sean Brackett, being duly sworn, state:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for the DNA of Kenneth STURDIVANT.

2. I am a regularly appointed Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been since November of 2015. As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18.

3. Prior to the ATF, I served as an active-duty officer in the United States Army for over nine years. During this time, I conducted multiple overseas deployments furthering United States interests. I am a 2005 graduate of the United States Military Academy and also received a Master's Degree from American Military University in 2014. I graduated from the ATF Special Agent Basic Training program in June, 2016. I am currently assigned to the ATF New Haven field office, within the Boston field division.

4. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts.  have participated in investigations involving individuals who unlawfully possess

firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs. As such, I have coordinated the controlled purchases of illegal narcotics and firearms and participated in controlled purchases of narcotics and firearms utilizing confidential sources, cooperating witnesses and undercover law enforcement officers. I have also coordinated the execution of search and arrest warrants pertaining to individuals involved in the illegal possession and distribution of firearms and narcotics. I have conducted electronic and physical surveillance of individuals involved in illegal firearms and drug distribution; analyzed records documenting the purchase and sale of firearms and illegal drugs, and spoke with informants and subjects, as well as local, state and federal law enforcement officers, regarding the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal firearms and drugs. In addition, I have been involved in the investigation of street gangs, including gangs with a national presence as well as locally based gangs. I have received training, both formal and on- the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

5. I am currently investigating KENNETH STURDIVANT and other known and unknown persons for the following offenses: Title 18 United States Code, Section 922(g)(1) (Possession of a firearm/ammunition by a previously convicted felon) and Title 21, United States Code, Sections 841(a)(1) and 846 (Distribution and Possession with Intent to Distribute Narcotics and Conspiracy to Possess with Intent to Distribute and to Distribute Narcotics(Fentanyl)) (collectively, the "Target Offenses").

6. Based on the facts set forth in this affidavit, I believe there is probable cause to that STURDIVANT was engaging in the Target Offenses.

7. I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the

circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents and Task Force Officers of the ATF, (3) members of the New Haven Police Department, and (4) my experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part.

8. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested DNA warrant, it does not include all information gathered to date by the ATF and other law enforcement entities in relation to this investigation.

## JURISDICTION

9. This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

10. **I submit this affidavit in support of a search and seizure warrant authorizing the retrieval of DNA from:**

- **KENNETH STURDIVANT** (with a birth date of xx-xx-1985 that is known to me), who is currently pending trial in Case No. 3:24-cr-0065(SRU).

## PROBABLE CAUSE

### November 16, 2023, Arrest of Kenneth STURDIVANT

11. On November 16, 2023, at approximately 8:45 AM, patrol officers of the New Haven Police Department (NHPD) were conducting crime suppression patrols in a marked police vehicle in the vicinity of Congress Avenue. Officers observed a blue Kia Sportage bearing Florida license plate QNC-V86 parked in front of 750 Congress Avenue. The driver/sole occupant was observed as a black male wearing a bright red bubble style coat sitting leaned back in the driver's

3

seat. Officers were aware that there had been many illegal narcotics transactions occurring in the area of 750 Congress Avenue in the weeks prior.

12. Officers conducted a U-turn and as they attempted to pull behind the vehicle, the Kia pulled away from the curb and began travelling east on Congress Avenue and then took a quick right hand turn south down Redfield Street. Officers observed that the driver failed to utilize a turn signal when making the right onto Redfield Street. The Officers then initiated lights and siren in an attempt to conduct a motor vehicle stop. The driver of the Kia responded by accelerating and failing to stop. Officers observed the vehicle make another right turn on Columbus Avenue before making another right on West Street and then right again back onto Congress Avenue. The Officers lost sight of the vehicle after the last turn onto Congress Avenue.

13. While canvassing for the vehicle, the Officers observed it parked in a rear parking lot up against the far rear wall of 767 Congress Avenue. A black male wearing a bright red bubble vest style coat later identified as Kenneth STURDIVANT was seen walking away from the car and entering the rear driver side door of a passing Kia Forte.

14. The Kia Forte began to travel west on Congress Avenue toward Downes Street at which time NHPD Officers pulled behind said vehicle and conducted a motor vehicle stop. STURDIVANT was immediately detained in handcuffs as well as the vehicle's operator. STURDIVANT was placed in the rear of a marked police cruiser at this time. The vehicle's operator as well as the front seat passenger told law enforcement that they stopped because STURDIVANT flagged them down before immediately entering their rear seat and telling them to "go" as Officers pulled behind their car. The vehicle operator explained that he and STURDIVANT are friends, but he did not know what was going on prior to STURDIVANT getting inside their vehicle. While speaking with STURDIVANT, he admitted to Officers that he fled from police in the Kia Sportage because he believed he had an active warrant for his arrest. A

4

warrant check for STURDIVANT was negative.

15. Officers then conducted a K-9 track around the Kia Sportage abandoned by STURDIVANT. In a tree line, approximately 15 feet to the front of the vehicle, 2 different NHPD K-9s alerted to the presence of narcotics. Officers searched the area and discovered a Smith & Wesson model M&P Shield 9, caliber 9 x 19mm semi-automatic pistol bearing serial number HLT9660 and one cardboard box containing four (4) large bundles held together with black rubber bands containing wax paper folds with a white powder-like substance. According to the seizing Officer, the firearm and cardboard box both appeared to be in pristine condition and the Officer concluded the items were recently placed there. The bundles had a total bag weight of approximately 45 grams with packaging. Lab testing confirmed the presence of fentanyl and xylazine in the powder contained in the wax bundles, with a total approximate weight of 6 grams of powder.

16. Officers also observed a camera in the vicinity of 781 Congress Avenue that had a direct view of the location where STURDIVANT abandoned the blue Kia Sportage. Officers were able to recover video of STURDIVANT exiting the vehicle. The video appears to be motion activated and shows STURDIVANT quickly rummaging around the driver's compartment of the vehicle before exiting and heading in the direction of the location where Officers discovered the firearm and narcotics. The video stops before showing STURDIVANT placing the contraband in the tree line. However, based on the video and the location of the found contraband, I believe it is clear that STURDIVANT did in fact place the firearm and fentanyl there.



17.     Additionally, I reviewed the body worn camera footage from the incident. During a segment of video of STURDIVANT in the rear of a NHPD cruiser, STURDIVANT is seen utilizing his cell phone to call an unknown male in the vicinity. STURDIVANT asks the unidentified male to drive by "the cut" near "SB's house." The male asks STURDIVANT which truck, to which STURDIVANT replied "the blue shit." He then described it as parked in the "little parking lot." STURDIVANT asks the male "if you could grab the stuff, nigga my shit in the cut across the street from the cut." He then asks him to go by the lot and look in to see if police were already there. The unknown male responded, "yeah they in there." The call was ended shortly after as an officer identified the phone and seized it from STURDIVANT. Based on my training and experience, I believe STURDIVANT was directing the unknown male to the area where he left the firearm and narcotics to retrieve the items he attempted to hide there.

18. Upon learning of STURDIVANT's arrest, ATF Task Force Officer (TFO) Borges and I went to the New Haven Police Department in an effort to conduct a post-arrest interview of STURDIVANT. STURDIVANT declined to be interviewed, refusing to even leave the holding area. While in the detention-holding area, one of the detention supervisors informed me that STURDIVANT had a large amount of cash secreted in his anus when he was processed. A review of the arresting Officer's report shows that STURDIVANT had a total of $2600 on his person at the time of his arrest. The denominations of the currency were as follows: thirteen $100 dollar bills, five $50 dollar bills, forty-nine $20 dollar bills, three $10 dollar bills, six $5 dollar bills, and ten $1 dollar bills. Based on my training and experience, the amount of money and the various denominations, and the way in which STURIVANT attempted to conceal it are consistent with proceeds from narcotics trafficking. Also seized from STURDIVANT's person incident to his arrest were two cellular telephones.

19.     As stated earlier, STURDIVANT is on federal supervised release for his past federal narcotics charges. An ATF informant, whose past information has been deemed accurate and credible and has led to several arrests, has told ATF that STURDIVANT has returned to selling narcotics since his release from federal prison.

20.     On January 30, 2024, the firearm and swabs of the firearm were sent to State of Connecticut Department of Emergency Services and Public Protection Division of Scientific Service lab for analysis. The lab returned a DNA profile for all the swabs.

21.     In addition, the DNA profile found on the firearm seized on November 16, 2023, forensically matched the DNA profile found on evidence from a 2012 robbery investigation in which STURDIVANT was the suspect.

22.     On March 26, 2024, a federal grand jury returned an indictment charging STURDIVANT with violations of 18 U.S.C. §§ 922(g)(1), 924(a)(8), unlawful possession of a firearm and ammunition by a felon, and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), possession with intent to distribute fentanyl.

**Authorization Request**

23.     Based on the foregoing, I am requesting a search warrant authorizing me and/ or fellow agents or officers to take buccal swabs from the suspect in order to compare them to DNA found on the firearm. ATF will collect the DNA samples sought herein by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds. Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized may be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing, and analysis.

24. I intend to execute the DNA search warrant while STURDIVANT remains under court supervision. In the event that the suspects are non-compliant, and due to the potential dangers to both the executing officers and defendant associated with executing a validly issued search warrant on a non-compliant subject, I would request that the Court authorize law enforcement agents and officers to use reasonable measures necessary to restrain STURDIVANT for the sole purpose of obtaining two buccal DNA swabs. *See In Re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 171 n.8 (2d Cir. 2008) ("The subject of a validly issued search warrant has no right to resist the search") (citing cases including *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968)); *see also United States v. Bullock*, 71 F.3d 171, 176 (5th Cir. 1965) ("The use of force in taking the [hair and blood] samples was caused by Bullock's refusal to comply with a lawful warrant and was reasonable."). As articulated above, the two buccal DNA swabs will be obtained by taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds.

25. Based upon the foregoing, there is probable cause to believe that STURDIVANT's DNA swabs will constitute evidence of a violation of the Target Offenses.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing two buccal DNA swab samples from STURDIVANT.

Respectfully submitted,

SEAN BRACKETT
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

RMS

Subscribed and sworn in my presence ~~Subscribed and sworn before me via telephone on~~ March 29, 2024, in New Haven, Connecticut.

HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

1